IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| B.F. JACKSON, INC. d/b/a | § | |
| BILL JACKSON & ASSOCIATES | § | |
| and BILL JACKSON, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-3244 |
| | § | |
| COSTAR REALTY INFORMATION, | § | |
| INC. d/b/a COSTAR GROUP and | § | |
| CURTIS RICKETTS, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] is Defendants' Motion to Dismiss
Amended Complaint (Docket Entry No. 11).[2]  The court has considered
the motion, all relevant filings, and the applicable law.  For the
reasons set forth below, the court **RECOMMENDS** that the motion be
**GRANTED IN PART and DENIED IN PART.**

### I.  Case Background

This action was filed in state court by Plaintiffs,
complaining that Defendants illegally sought money from Plaintiffs
for internet services not utilized by Plaintiffs.  Defendant CoStar
Realty Information ("CoStar"), prior to service on Defendant Curtis

---

[1]     This case was referred to the undersigned magistrate judge pursuant
to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the
Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  Docket Entry
No. 13.

[2]     Defendants' first motion to dismiss was rendered moot by Plaintiffs'
amended complaint and Defendants' motion to dismiss the amended complaint.  The
court **RECOMMENDS** that Defendants' Motion to Dismiss (Docket Entry No. 8) be
**DISMISSED AS MOOT.**

Ricketts ("Ricketts"), removed the case to this court based on diversity jurisdiction. The court recounts the underlying facts from Plaintiffs' perspective.

Plaintiff B.F. Jackson, Inc., ("Business") is a company that appraises residential real estate, and Plaintiff Bill Jackson ("Jackson") is the president of the company.[3] Defendant CoStar is a company that provides subscription internet information services primarily for the commercial real estate industry.[4] Defendant Ricketts heads its fraud, theft, and litigation team.[5]

Plaintiffs never subscribed to or accessed Defendants' services, but received a letter from Defendant Ricketts in June 2008 demanding payment for using them without authorization.[6] The letter stated that an investigation by Defendants revealed that employees of Plaintiff Business had used Defendant CoStar's internet services repeatedly, totaling 183 logins, over 61 online hours, and nearly 26,000 page hits.[7] The letter further alleged that Plaintiff Business's employees used the pass code assigned to another company and "agreed to and violated the online terms of use

---

[3]    Plaintiffs' First Amended Complaint, Docket Entry No. 9, ¶ 7.

[4]    Id. at ¶ 8.

[5]    Id.

[6]    See id. at ¶¶ 9-11; Ex. A, letter from Defendant Ricketts to Plaintiffs dated June 4, 2008, p. 1 (unnumbered).

[7]    Id. at Ex. A, letter from Defendant Ricketts to Plaintiffs dated June 4, 2008, p. 1 (unnumbered).

posted . . . and then used, exploited and/or copied [Defendant] CoStar's valuable proprietary information, photographs, and software created by [Defendant] CoStar's team of research professionals and product developers."[8]

The letter listed copyright infringement, breach of contract, fraud, and violations of the Computer Fraud and Abuse Act as potential causes of action that Defendant CoStar could bring against Plaintiffs.[9]   To evidence the diligence with which Defendant CoStar protected its intellectual property, Defendant CoStar detailed the outcomes of prior litigation and a reward program designed to prevent improper usage of its services.[10]

According to the letter, Defendant CoStar would opt not to take legal action if Plaintiff Business would "cure . . . past violations by paying for past unauthorized use and entering a license to cover future use."[11]   Enclosed with the letter was a proposed license agreement and an invoice related to the services Defendant CoStar alleged Plaintiff Business had used.[12]   The total demanded was $93,030 for past use and $2658 per month for future

---

[8]     Id.

[9]     Id. at p. 2 (unnumbered).

[10]    See id.

[11]    Id.

[12]    See id.; id. at enclosures.

3

access to realty information concerning Dallas and Houston.[13] The letter allowed Plaintiffs two business days after receipt to respond.[14] On June 10 and 11, 2008, Defendant Ricketts telephoned Plaintiff Jackson about this issue and referred to Plaintiffs as "thieves" and "frauds."[15]

Plaintiffs allege that a small firm authorized to use Defendant CoStar's services was sharing offices with Plaintiff Business and that a reasonable investigation by Defendants would have revealed this fact.[16] According to Plaintiffs, Defendant CoStar's services would not assist in the type of appraisal services provided by Plaintiff Business.[17] As a result of Defendants' communications with Plaintiffs, Plaintiff Jackson suffered "significant emotional trauma and mental anguish" that ultimately impeded his contemporaneous recovery from an unrelated surgery.[18]

Plaintiffs filed this action in state court on July 16, 2008, and Defendant CoStar removed it on October 31, 2008.[19] Plaintiffs

---

[13]    Id. at enclosures.

[14]    See id. at pp. 2-3 (unnumbered).

[15]    Plaintiffs' First Amended Complaint, Docket Entry No. 9, ¶ 16.

[16]    Id. at ¶ 18.

[17]    Id.

[18]    Id. at ¶¶ 17, 28.

[19]    See Notice of Removal, Docket Entry No. 1, p. 1; attach. 4 (unnumbered), Plaintiffs' Original Petition.

originally alleged only violations of the Texas Debt Collection Act ("TDCA")[20] and negligent misrepresentation.[21] Plaintiff sought injunctive relief and damages, as well as interest, attorney's fees, and costs.[22]

In December 2008, after Defendants filed their first motion to dismiss, Plaintiffs amended their complaint to add a few factual allegations and several claims.[23] Lumped in with the allegations of negligent misrepresentation were new claims for unreasonable collection efforts, civil extortion, intentional tort, and ordinary and gross negligence.[24] Plaintiffs also added a claim that

---

[20]    Tex. Fin. Code Ann. §§ 392.001-392.404. Courts variously refer to this act as Texas Debt Collections Act, Texas Debt Collection Act, Texas Debt Collections Practices Act, Texas Debt Collection Practices Act, Texas Collection Practices Act, or simply as Chapter 392 of the Texas Finance Code. See, e.g., Pelt v. United States Bank Trust Nat'l Ass'n, 359 F.3d 764, 766 n.2 (5th Cir. 2004)(applying Texas law); Prophet v. Meyers, Civil Action No. H-08-0492, 2008 WL 2328349, at *1 (S.D. Tex. June 4, 2008)(unpublished)(applying Texas law); Turner v. Oxford Mgmt. Servs., Inc., 552 F. Supp.2d 648, 649 (S.D. Tex. 2008)(applying Texas law); Brown v. Oaklawn Bank, 718 S.W.2d 678, 679 (Tex. 1986)(referring to former codification); EMC Mortgage Corp. v. Jones, 252 S.W.3d 857, 863 (Tex. App.–Dallas 2008, no pet.); Blanche v. First Nationwide Mortgage Corp., 74 S.W.3d 444, 453 (Tex. App.–Dallas 2002, no pet.); T&S Auto Sales, Inc. v. Anderson, No. 03-99-00354-CV, 2000 WL 140935, at *1 (Tex. App.–Austin Feb. 3, 2000, no pet.)(unpublished). The statute does not give a short title for the act. See Tex. Fin. Code Ann. §§ 392.001-392.404. By far, "Texas Debt Collection Act" is the most popular moniker. This is the name by which Plaintiffs refer to the statute in their amended complaint (versus "Texas Debt Collection Practices Act" in their original petition). Compare Notice of Removal, Docket Entry No. 1, attach. 4 (unnumbered), Plaintiffs' Original Petition, ¶ 19 with Plaintiffs' First Amended Complaint, Docket Entry No. 9, ¶ 20.

[21]    See Notice of Removal, Docket Entry No. 1, attach. 4 (unnumbered), Plaintiffs' Original Petition, ¶¶ 19-24.

[22]    See id. at ¶ 21; § H.

[23]    See, e.g., Plaintiffs' First Amended Complaint, Docket Entry No. 9, ¶¶ 18, 22, 24, 28-31.

[24]    See id. at ¶¶ 24-29.

Defendants violated the Texas Deceptive Trade Practices - Consumer Protection Act ("TDTPA").[25]  Defendants filed a motion to dismiss the amended complaint, which the court now takes under consideration.

## II.  Dismissal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissal of an action is appropriate whenever the complaint, on its face, fails to state a claim upon which relief can be granted. When considering a motion to dismiss, the court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts.  In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007).  A complaint need not contain "detailed factual allegations," but must include sufficient facts to indicate the plausibility of the claims asserted, raising the "right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also In re Katrina Canal Breaches Litig., 495 F.3d at 205.  A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  Bell Atl. Corp., 550 U.S. at 555.  "[O]f course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."  Id. at 556 (internal quotation marks omitted).

_____

[25]    Tex. Bus. & Com. Code Ann. §§ 17.41-17.63.

6

### III. Analysis

Defendants move to dismiss Plaintiffs' amended complaint in its entirety. The court addresses each count separately.

**A.    TDCA**

The TDCA protects consumers from wrongful debt collection practices. <u>See</u> <u>Ford v. City State Bank of Palacios</u>, 44 S.W.3d 121, 135 (Tex. App.–Corpus Christi 2001, no pet.). The act prohibits a "debt collector" in "debt collection" from "us[ing] threats, coercion, or attempts to coerce" by any of a number of listed means, including "accusing falsely or threatening to accuse falsely a person of fraud or any other crime" and "threatening that the debtor will be arrested for nonpayment of a consumer debt without proper court proceedings." Tex. Fin. Code Ann. § 392.301(a). Also prohibited are acts by a "debt collector" in "debt collection" such as using "unfair or unconscionable means" employing the collection or attempted collection of interest not expressly authorized by the underlying agreement or legally chargeable to the consumer and using "a fraudulent, deceptive, or misleading representation" regarding the increase of a consumer debt by unauthorized fees. Tex. Fin. Code Ann. §§ 392.303(a); 392.304(a).

The statute defines "debt collection" as "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor." Tex. Fin. Code Ann. § 392.001(5). Consumer debts cover those

obligations that are "primarily for personal, family, or household purposes." Tex. Fin. Code Ann. § 392.001(2). Caselaw defines "personal" as affecting the private concerns of a particular individual or each of many individuals. <u>Ford</u>, 44 S.W.3d at 136. By way of contrast, commercial transactions are not personal and are not covered by the TDCA. <u>Id.</u>

Plaintiffs accuse Defendants of using all of the above improper tactics as well as a few others. Defendants argue, in their motion to dismiss, that the monetary dispute between Plaintiffs and Defendants does not qualify as a consumer debt, or even a debt at all. Plaintiffs retort that no debt is owed Defendant CoStar, but, if a debt was owed, it "could be considered a consumer debt under the TDCA."[26] Plaintiffs explain that even though the services offered by Defendants "apparently related to commercial real estate," Plaintiffs could have used them for personal purposes, such as "find[ing] a commercial site for *its* own personal usage."[27] As far as characterizing the money demanded by Defendant CoStar as a debt, Plaintiffs contend that Defendants claimed money was owed by Plaintiffs on services rendered by Defendants, which Plaintiffs view as the classic debt scenario.

---

[26]     Plaintiffs' Response to Defendants' Motion to Dismiss Plaintiffs' Amended Complaint, Docket Entry No. 15, p. 4.

[27]     <u>Id.</u> at p. 4 & n.1 (emphasis added). Plaintiffs' usage of the neuter personal pronoun "it" in their example of potential consumer usage belies any legitimacy to the argument.

As the court finds Plaintiffs' argument on the consumer nature of the dispute to be completely untenable, it does not concern itself with whether it meets the intended statutory meaning for debt. According to Plaintiffs' complaint, Defendant CoStar sells subscriptions to internet services "principally related to the commercial real estate industry."[28] Even Plaintiffs' description of Defendant CoStar's products disallows an inference that its services would be of any personal, family, or household value.

Moreover, Defendant CoStar's demand, according to the amended complaint and attachment, was directed at Plaintiff Business and its president, Plaintiff Jackson. Surely, the court need not explain why a business is incapable of personal, family, or household services.[29] Cf. Ford, 44 S.W.3d at 136 (explaining that commercial promissory notes collateralized by commercial security agreements are not consumer debts even though the income from the agricultural business benefitted the owner and his family); Garza v. Bancorp Group, Inc., 955 F. Supp. 68, 71-72 (S.D. Tex. 1996)(finding that a lease of security equipment for the benefit of family members who worked at family-owned businesses was not a consumer transaction because it had a commercial purpose).

---

[28]   Plaintiffs' First Amended Complaint, Docket Entry No. 9, ¶ 8.

[29]   The court also notes that monthly fees of over $2,600 for a license to review commercial real estate information, as charged by Defendant CoStar, would fit very few personal, family, or household budgets.

As a matter of law, Plaintiffs have failed to plead facts indicating that the dispute at issue involves a consumer debt. Thus, Plaintiffs' TDCA claim should be dismissed.

**B.   Negligent Misrepresentation**

The following elements are necessary to prove negligent misrepresentation:   "(1) the representation [was] made by a defendant in the course of his business, or in a transaction in which he ha[d] a pecuniary interest; (2) the defendant supplied 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffer[ed] pecuniary loss by justifiably relying on the representation." Fed. Land Bank Ass'n of Tyler v. Sloane, 825 S.W.2d 439, 442 (Tex. 1991)(adopting the standard set out in the Restatement (Second) of Torts § 552 (1977)); see also Coburn Supply Co. v. Kohler Co., 342 F.3d 372, 377 (5th Cir. 2003)(applying Texas law).  Reliance necessarily implies action; that is, the plaintiff must choose a course of action because of the misrepresentation and, thereby, suffer a loss.  See D.B. Dobbs, The Law of Torts § 474, at 1358 (2001).

Here Plaintiffs claim that Defendants falsely represented that Plaintiffs owed a debt and made threats with regard to collecting the debt.   "Plaintiffs justifiably relied on Defendants' representations, which proximately caused Plaintiffs' injuries of

excessive anxiety and anguish."[30]  According to the amended complaint, Plaintiff Jackson,[31] as a result of Defendants' actions, suffered a more difficult recovery process from prior surgery. Defendants argue that Plaintiffs do not allege facts that suggest reliance, justifiability, causation, or pecuniary loss.  In their response, Plaintiffs reiterated that Plaintiff Jackson "immediately became increasingly ill" in response to Defendants' threats that they would contact federal authorities to seek prosecution should Plaintiffs fail to pay.[32]  In an effort to avoid the pecuniary loss rule, Plaintiffs argue that Plaintiffs' reliance led to physical and emotional injuries that, when addressed, led to pecuniary loss in the form of medical bills.

Despite their efforts, Plaintiffs allege no basis for a negligent misrepresentation claim.  Their suggestion that Plaintiff Jackson became increasingly ill *in reliance on* (as opposed to *as a result of*) Defendants' alleged misrepresentations is absurd and turns the tort of negligent misrepresentation on its head.  Illness simply is not an act of freewill entered into in response to statements, true or not, that a debt is owed or that court action is imminent.  If this were a case in which a drug company promised

---

[30]  Plaintiffs' First Amended Complaint, Docket Entry No. 9, ¶ 26.

[31]  Plaintiff Jackson is the only plaintiff capable of "excessive anxiety and anguish."

[32]  Plaintiffs' Response to Defendants' Motion to Dismiss Plaintiffs' Amended Complaint, Docket Entry No. 15, p. 6.

to pay all of an individual medical expenses if he agreed to take a certain medication and the individual agreed, that individual might have a negligent misrepresentation claim should the drug company fail to fulfill its commitment. Plaintiff Jackson's illness is unconnected, by any degree of reliance, to Defendants' alleged misrepresentations.

As an additional, albeit unnecessary, basis for dismissal, pecuniary losses do not refer to the expense of treating mental anguish and physical injury. See Sloane, 825 S.W.2d at 442-43 (refusing to extend damages recoverable for negligent misrepresentation to include damages for mental anguish). Plaintiffs' attempt to transform those into pecuniary damages by converting them into a dollar amount is unconvincing.

For these reasons, among others not discussed, Plaintiffs' claim for negligent misrepresentation should be dismissed.

**C.** **Unreasonable Collection Efforts**

Unreasonable collection efforts is a Texas common-law intentional tort that lacks clearly defined elements. EMC Mortgage Corp. v. Jones, 252 S.W.3d 857, 868 (Tex. App.–Dallas 2008, no pet.); see also Pullins v. Credit Exch. of Dallas, Inc., 538 S.W.2d 681, 683 (Tex. Civ. App.–Waco 1976, writ ref'd n.r.e.)(stating that unreasonable collection efforts is a suit based on an intentional act, not negligence); Montgomery Ward & Co. v. Brewer, 416 S.W.2d 837, 844 (Tex. Civ. App.–Waco 1967, writ ref'd n.r.e.)(basing

decision on lack of intent to harm); _but see_ <u>McDonald v. Bennett</u>,
674 F.2d 1080, 1089 (5th Cir. 1982)(applying Texas law and citing
<u>Employee Fin. Co. v. Lathram</u>, 363 S.W.2d 899, 901 (Tex. Civ.
App.–Fort Worth 1962, pet. granted), <u>rev'd on other grounds</u>, 369
S.W.2d 927 (Tex. 1963), which found the tort to be subject to an
ordinary-care standard).

Some courts explain that the tort involves collection efforts
that amount to "a course of harassment" that "was willful, wanton,
malicious, and intended to inflict mental anguish and bodily harm."
<u>E.g.</u>, <u>Davis v. Farm Bureau Bank, FSB</u>, Civil Action No. SA-07-CA-
967-XR, 2008 WL 1924247, at *4 (W.D. Tex. Apr. 30, 2008)(slip
copy)(applying Texas law); <u>Mitchell v. Chase Home Fin. LLC</u>, Civil
Action No. 3:06-CV-2099-K, 2008 WL 623395, at *6 (N.D. Tex. Mar. 4,
2008)(slip copy)(applying Texas law); <u>Woodrum v. Bradley</u>, No. B14-
90-00071-CV, 1990 WL 151264, at *4 (Tex. App.–Houston [14th Dist.]
Oct. 11, 1990, writ denied); <u>Montgomery Ward & Co.</u>, 416 S.W.2d at
844. Conduct considered unreasonable is judged on a case-by-case
basis. <u>Woodrum</u>, 1990 WL 151264, at *4.

The tort can apply in commercial situations. <u>See</u> <u>McDonald</u>,
674 F.2d at 1089 n.8. As a general rule, mental anguish damages
alone will not establish a right of recovery; the plaintiff must
suffer some physical injury or other actual damages in order to be
entitled to relief. <u>Id.</u> at 1088 (citing <u>Duty v. Gen. Fin. Co.</u>, 273

S.W.2d 64 (Tex. 1954)); <u>Harned v. E-Z Fin. Co.</u>, 254 S.W.2d 81, 82-83 (Tex. 1953)).

Plaintiff Jackson claims mental anguish and physical injuries resulting from Defendants' letter and two telephone calls. Defendants argue that the cause of action for unreasonable collection efforts fails on the facts asserted because Defendants' actions are insufficient, as a matter of law, to amount to a course of harassment and Defendant Business cannot experience mental anguish or physical injuries. In their heading for their discussion of this claim, Defendants also state that Plaintiffs fail to allege the existence of a debt; however, Defendants do not develop that argument in this section of their brief. Plaintiffs focus on their allegation that, although no debt was owed, Defendants attempted to collect a debt by means of threats of criminal prosecution causing Plaintiff Jackson harm.

As Plaintiff Business asserts no injury in connection with this cause of action, its claim for unreasonable collection efforts should be dismissed. However, Plaintiff Jackson does allege mental and physical injuries resulting from Defendants' collection efforts. Based solely on the amended complaint and without more specific guidance from Texas caselaw, the court cannot foreclose the possibility that Plaintiff Jackson may produce evidence in support of his allegations of unreasonable collection efforts.

Thus, the claim should not be dismissed as to Plaintiff Jackson because he has met his burden of pleading. The burden of proof will prove to be considerably more difficult.[33]

## D. <u>Civil Extortion and Intentional Tort</u>

Pursuant to an electronic search of Texas caselaw, the court finds no indication that Texas recognizes civil extortion as a cause of action. This is the basis on which Defendants move for dismissal of this claim. Defendants cite <u>Kennedy Ship & Repair, LP v. Loc Tran</u>, 256 F. Supp.2d 678, 686 (S.D. Tex. 2003), in support of their assertion. Based on its research, the court in that case found no authority indicating that Texas recognized civil extortion as a viable case of action. <u>See</u> <u>id.</u> Plaintiffs do not respond to this argument. Absent some authority recognizing civil extortion in Texas, this claim should be dismissed.

Similarly, the court finds no legal authority recognizing a nondescript intentional tort as asserted by Plaintiffs in their amended complaint. Defendants point out that Plaintiffs' reference to such a claim in their amended complaint does not constitute a

---

[33] The court notes that the letter sent by Defendants and two telephone calls is thin evidence on which to base a claim that Defendants engaged in a willful, wanton, and malicious course of harassment. <u>See</u> <u>McDonald</u>, 674 F.2d at 1089 n.8 (intimating that acceleration of loan, litigation tactics (including attorney letters and a lengthy deposition), and statements that debtor was not a shareholder would not sustain a claim for unreasonable collection efforts). Nevertheless, those actions combined with Plaintiffs' contention that no debt was owed are sufficient to survive Defendants' motion to dismiss.

valid claim for relief.  Plaintiffs do not respond to this argument either.  This claim should also be dismissed.

**E.   Ordinary and Gross Negligence**

In order to succeed on their negligence cause of action, Plaintiffs must prove: 1) a legal duty owed by Defendants to Plaintiffs; 2) a breach of the duty; and 3) damages proximately caused by the breach.  Lee Lewis Constr., Inc. v. Harrison, 70 S.W.3d 778, 782 (Tex. 2001).  The court balances several factors to determine whether a defendant owes a plaintiff a duty; foreseeability, risk, and likelihood of injury is weighed against the social utility of the defendant's conduct, the burden on defendant to guard against injury, and the consequences of placing the burden on the defendant.  Lefmark Mgmt. Co. v. Old, 946 S.W.2d 52, 59 (Tex. 1997).  The existence of a duty is a determination made by the court as a matter of law.  Id. at 58-59.

In Texas, a plaintiff may plead gross negligence as grounds for exemplary damages.  See Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a).  Gross negligence refers to an actor's engagement in a act or omission that objectively involves an extreme degree of risk, in spite of that actor's awareness of the risk.  Tex. Civ. Prac. & Rem. Code Ann. § 41.001(11); see also Dillard Dep't Stores, Inc. v. Silva, 148 S.W.3d 370, 373 (Tex. 2004).  Conscious indifference on the part of the defendant is what transforms ordinary negligence into gross negligence.  Newman v. Tropical

<u>Visions, Inc.</u>, 891 S.W.2d 713, 721 (Tex. App.–San Antonio 1994, writ denied).

Plaintiffs allege that Defendants represented to Plaintiffs that they owed debts which they did not and threatened "improper, unethical, and illegal courses of action" to collect money from Plaintiffs.[34] Defendants challenge every element of Plaintiffs' negligence action. Then, based on those arguments, they also call for the dismissal of the gross negligence claim, stating that Plaintiffs cannot maintain a gross negligence claim if their negligence claim is not valid. Plaintiffs assert that they have pled all of the elements of a negligence claim, particularly discussing Defendants' "general duty to not make misrepresentations and maliciously threaten the Plaintiffs."[35] In support of the alleged "general duty," Plaintiffs cite to <u>EDCO Prod., Inc. v. Hernandez</u>, 794 S.W.2d 69, 76-77 (Tex. App.–San Antonio 1990, pet. denied), and summarize the case as stating that "an individual owes a duty of ordinary care to the general public in making representations and in ascertaining the accuracy of information given to others."[36]

_____

[34] Plaintiffs' First Amended Complaint, Docket Entry No. 9, ¶ 26.

[35] Plaintiffs' Response to Defendants' Motion to Dismiss Plaintiffs' Amended Complaint, Docket Entry No. 15, p. 8.

[36] <u>Id.</u>

Plaintiffs are inaccurate in their representation of the EDCO Prod., Inc. case, as recited above. That case dealt with the duty of a possessor of land toward an employee of a independent contractor, which was to protect the employee from dangers about which it knew and those discoverable in the exercise of reasonable care. Id. at 72. The actual language of the case reads: "We are not inclined to shield a possessor from liability for injuries resulting from negligent misrepresentations of fact, particularly where . . . there has been failure to exercise reasonable care to ascertain the accuracy of the information communicated to plaintiff." Id. at 76-77. Plaintiffs here deny any relationship with Defendants, who allegedly contacted Plaintiffs "out of the blue."[37] In this case, then, no similar relationship existed between the parties that warranted imposing a duty on Defendants for the benefit of Plaintiffs.

Moreover, in their amended complaint, Plaintiffs identify no duty owed them by Defendants. The duties alleged by Plaintiffs in their response to the motion to dismiss do not fall within the ambit of a negligence claim. Rather, misrepresentations and threats are in the nature of intentional acts. To the extent that Plaintiffs allege misrepresentations that were made negligently, those assertions still do not fit within the parameters of a negligence claim, but simply recast Plaintiffs' negligent

---

[37]    Plaintiffs' First Amended Complaint, Docket Entry No. 9, ¶ 17.

18

misrepresentation claim under a different appellation. Plaintiffs also failed to address any of the factors used by courts in the duty calculus. The court does not find that the facts pled even remotely suggest that Defendants owed Plaintiffs a legal duty.

With regard to gross negligence, the allegations that Defendant Ricketts wrote a letter threatening criminal action and made two phone calls during which he accused Plaintiffs of being thieves and frauds are insufficient to sustain the claim because those actions do not involve an extreme degree of risk.[38]

Both the negligence and the gross negligence causes of action should be dismissed.

## F.  TDTPA

In order to succeed on a claim under the TDTPA, a plaintiff must show that: 1) it is a consumer; 2) the defendant violated a specific provision of the statute; and 3) the violation was the producing cause of the plaintiff's actual damages. Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co., 313 F.3d 899, 907 (5th Cir. 2002)(applying Texas law). The list of prohibited practices is rather long. See Tex. Bus. & Com. Code Ann. § 17.46. The TDCA

---

[38]    The court acknowledges that this is not the precise basis on which Defendants moved for dismissal. Although not discussed, the court also concurs with Defendants that, absent a successful negligence claim that gives rise to the award of actual damages, Plaintiffs cannot maintain a gross negligence claim for punitive damages. See Newman, 891 S.W.2d at 721.

ties into the TDTPA such that a violation of the former is also a violation of the latter.  <u>See</u> Tex. Fin. Code Ann. § 392.404(a).

Under the TDTPA, a "consumer" is "an individual, partnership, corporation . . . who seeks or acquires by purchase or lease, any goods or services."  Tex. Bus. & Com. Code Ann. § 17.45(4). According to case law, a plaintiff qualifies as a consumer and may pursue a private cause of action under the TDTPA if: 1) the plaintiff "sought or acquired goods or services by purchase or lease;" and 2) "the goods or services purchased or leased . . . form the basis of the complaint."  <u>Brittan Commc'ns Int'l Corp.</u>, 313 F.3d at 907; <u>Cameron v. Terrell & Garrett, Inc.</u>, 618 S.W.2d 535, 539 (Tex. 1981).  The burden is on the plaintiff to prove that it is a consumer within the meaning of the TDTPA.  <u>GTE Mobilnet of S. Tex. Ltd. P'ship v. Telecell Cellular, Inc.</u>, 955 S.W.2d 286, 292-93 (Tex. App.–Houston [1st Dist.] 1997, writ denied).  Where the facts are undisputed, consumer status is a legal issue for the court to decide.  <u>Jones v. Star Houston, Inc.</u>, 45 S.W.3d 350, 356 (Tex. App.–Houston[1st Dist.] 2001, no pet.).

When Plaintiffs amended their complaint, they added this claim and listed the following actions as being in violation of the TDCPA: 1) representing that an agreement confers certain rights when it does not; 2) failing to disclose information about services in order to entice Plaintiffs' business; 3) taking advantage of

Plaintiffs' lack of knowledge, etc.; and 4) violating the TDCA.[39] Defendants argue that the amended complaint fails to state facts that demonstrate Plaintiffs are consumers. Although Plaintiffs deny that they ever entered a contract with Defendants or that they owe Defendants for any past services, Plaintiffs pled this cause of action, they argue, because Defendants claim that Plaintiffs sought and acquired services. In seeming acquiescence to Defendants' argument, Plaintiffs state that, "if the Court or jury determines that there was, in fact, a contract between the parties, Plaintiffs plead DTPA as an alternative cause of action."[40]

The facts alleged in the complaint do not support a TDTPA claim. As stated in the amended complaint, Plaintiffs never sought services from Defendants, never purchased Defendants' services, and never engaged Defendants' services. Therefore, they do not qualify as consumers. Plaintiff's pleading-in-the-alternative theory will not revive a claim that requires them to prove facts which they unequivocally deny. This cause of action should be dismissed.

## IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that the motion be **GRANTED IN PART and DENIED IN PART**.  If this Memorandum and Recommendation is adopted, the only remaining count will be the

---

[39]    Plaintiffs' First Amended Complaint, Docket Entry No. 9, ¶ 31.

[40]    Plaintiffs' Response to Defendants' Motion to Dismiss Plaintiffs' Amended Complaint, Docket Entry No. 15, p. 9.

unreasonable collection efforts claim alleged by Plaintiff Jackson. All claims brought by Plaintiff Business will be dismissed.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have ten days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this <u>20th</u> day of May, 2009.

_____
Nancy K. Johnson
United States Magistrate Judge